UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THOMAS JENSEN,<br><br>               Plaintiff,<br>v.<br>ADAM BRENDEL, *et al.*,<br><br>               Defendants. | Case No. 3:16-cv-00407-MMD-CBC<br><br>ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE CARLA B. CARRY |

**I.    SUMMARY**

Plaintiff Thomas Jensen, an incarcerated person in the custody of the Nevada Department of Corrections ("NDOC"), brought this civil rights action under 42 U.S.C. § 1983. Before the Court is the Report and Recommendation of United States Magistrate Judge Carla B. Carry ("R&R") recommending that the Court grant Defendants'[1] motion for summary judgment on Plaintiff's first amended complaint ("FAC") ("Motion") (ECF No. 35) and deny other pending motions (ECF Nos. 29, 30) as moot. (ECF No. 44.)[2] Plaintiff filed an objection ("Objection") (ECF No. 45) to which Defendants have not responded. For the reasons below, the Court overrules the Objection and adopts the R&R.

**II.    BACKGROUND**

The events giving rise to this case occurred while Plaintiff was housed at the Northern Nevada Correctional Center (NNCC). (ECF No. 6 at 1.) On screening, the Court allowed Plaintiff to proceed with Counts I-V in the FAC. (ECF Nos. 6, 9.) These counts

///

///

---

[1] Defendants are Adam Brendel, Sergeant Miller, James Buchanan and Timothy Howard.

[2] In addition to the Motion, the Court has considered Plaintiff's response (ECF No. 37), Defendants' reply (ECF No. 43) and the parties' accompanying exhibits.

consist of claims for retaliation, access to the courts, due process violations, conspiracy, and 42 U.S.C. § 1985(3) conspiracy. (ECF No. 6 at 5–8, 10.)

Plaintiff's claims stem from an incident involving Plaintiff and another inmate, during which Plaintiff alleges he was assaulted by the other inmate while working in culinary. (*Id.* at 3, 5.) However, Plaintiff's lawsuit is grounded on his allegations that Defendants threatened him with retaliation if he reported the incident, subjected and disciplined him based on false charges, threatened him with disciplinary action in the form of transfer to a maximum security prison for reporting the incident, and relatedly threatened him in retaliation if he filed a grievance. (ECF Nos. 6, 9.) Plaintiff also claims that both Defendants Buchanan and Howard refused to accept Plaintiff's complaints about staff misconduct and thereby impeded Plaintiff's ability to file a grievance on the matter. (ECF No. 6 at 3–4, ECF No. 9 at 4.)

Further background regarding Plaintiff's allegations and Defendants' responses are explained in detail in the R&R which this Court adopts.

## III.    LEGAL STANDARD

### A.    Review of Magistrate Judge's Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

In light of Plaintiff's Objection, the Court undertakes *de novo* review to determine whether to adopt Magistrate Judge Carry's R&R. Upon reviewing the R&R, the briefs and records in this case, the Court adopts the ultimate result in the R&R although it reaches different conclusions along the way.

### B.    Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///

///

## IV. DISCUSSION

In the R&R, Judge Carry recommends granting summary judgment, finding Plaintiff has failed to exhaust the claims he brings here. The Court agrees with this ultimate finding.

An incarcerated person's failure to exhaust administrative remedies is a proper basis for terminating a civil rights action under the Prison Litigation Reform Act ("PLRA"). *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). The PLRA requires inmates to first exhaust the administrative remedies available to them before filing an action in court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

The PLRA makes exhaustion mandatory. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The grievance process that a prison has put in place determines whether an inmate has complied with the exhaustion requirement. *See Jones v. Bock,* 549 U.S. 199, 218 (2007); *see also Griffin v. Arpaio,* 557 F.3d 1117, 1119–20 (9th Cir. 2009). NDOC Administrative Regulation ("AR") 740 prescribes the exhaustion requirements for NDOC inmates. First, the inmate is *typically* "expected to" resolve grievable issues through "informal resolution" whereby he discusses the matter with his caseworker before initiating the grievance process. (ECF No. 35-7 at 5 (AR 740.04 Informal Resolution).) If attempt at informal resolution does not work, then the inmate may engage in the grievance process as follows: (1) file an informal grievance within six months of the date of the damage, injury, or loss; (2) appeal an unfavorable response by filing a "first-level grievance" within five days of receiving the response; and (3) appeal an unfavorable first-level response by filing a "second-level grievance" within five days of receiving the first-level response. (*Id.* at 5–9.)

Here, it is undisputed that Plaintiff failed to exhaust NDOC's grievance process. However, the Supreme Court has identified three situations wherein an incarcerated person is not required to engage in a prison's grievance process because such remedy

has been effectively rendered unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016). The third situation is at issue in this case—"when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. The Ninth Circuit has adopted the ruling of sister circuits that a threat of retaliation may be sufficient to "render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *Mcbride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

In the Ninth Circuit, to determine whether an individual's failure to exhaust is excusable, the Court must make both subjective and objective findings. *Id.* First, for the subjective finding, the Court must find that "the threat [of retaliation] actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process." *Id.* As to this first prong, the Ninth Circuit has articulated that the "prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id.* Second, the Court must find that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Id.* (internal quotations and citation omitted). That is, the prisoner must have demonstrated that "his belief was objectively reasonable." *Id.* Objective reasonableness is found where there is

> some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure *and* that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

*Id.* (emphasis added).

In the R&R, Judge Carry found that Plaintiff has satisfied the subjective prong, but failed to present sufficient evidence to create a genuine dispute of material fact as to the objective prong. (ECF No. 44 at 6–7.) Plaintiff objects to Judge Carry's finding that he did not present evidence as to the objective prong. (ECF No. 45 at 1.) Plaintiff particularly points to his sworn declaration (ECF No. 37 at 18 (Pl.'s Exh. A)), and a letter he sent to

the Director of Prisons, James Dzurenda, dated June 22, 2016 ("Letter") (*Id.* at 20–23 (Pl.'s Exh. B)) as his evidence. (*See* ECF No. 45.)[3] In his Objection, Plaintiff indicates that the threats that dissuaded him from using the grievance process are: that he would be transferred to maximum security prison, have his property taken, or be subjected to false charges. (*Id.* at 3.) Upon reviewing Plaintiff's evidence, this Court is not convinced that Plaintiff satisfies either prong.

Plaintiff's sworn declaration only broadly asserts that "due to threats and intimidation [he] was unable to use the grievance process in filing grievances against [D]efendants." (ECF No. 37 at 18.) There are no facts in Plaintiff's declaration explaining what these threats and intimidations were. (*See id.*) Plaintiff's Letter provides that Plaintiff was submitting it "for exhaustion" because he is not able to engage in "the grievance process at the facility" "due to threats and intimidation." (*Id.* at 20.) The Court is able to decipher the following possible threats from the Letter.

First, Plaintiff notes that regarding the incident with the other inmate, Defendant Brendel told him "no further action will be taken," that Plaintiff was to "not . . . go [a]ny further in reporting incident to culinary Sgt. Roberson, nor file any grievance." (ECF No. 37 at 21.) Another correctional officer, who is not a defendant in this case, told him "[t]his doesn't go any further, understand." (*Id.*) The Letter indicates that after the two correctional officers made the noted statements, Plaintiff in fact spoke with "Sergeant Roberson" about the incident, including relaying to her what Defendant Brendel did. (*Id.*)

The Letter explains that three days later, on June 20, 2016, Defendant Miller called Plaintiff into his office and informed Plaintiff that he was being suspended from culinary. (*Id.* at 22.) Plaintiff claims that Miller then "began issuing retaliatory threats i.e. I'll get a

///

---

[3]To the extent Plaintiff argues that Judge Carry improperly considered that Plaintiff filed grievances regarding retaliation before the matter at issue here and did the same after the 6-month timeframe for filling a grievance under AR 740—including concerning the same incident and naming some Defendants (ECF No. 45 at 2; *see* ECF No, 44 at 6–7 (citing *e.g.*, ECF No. 35-4 at 3)), the Court notes that it does not consider those grievances in its analysis here.

6

NOC [[Nevada Offense Code)] and if I complain, he will make sure I'm found guilty and remove me from the facility." (*Id.*) The Letter states that Miller also said that "if I try to report incident to anyone above him (wardens) *or* file a grievance [, h]e will have me immediately locked up and take all my property away." (*Id.* (emphasis added).) Notably, the Letter is written to Dzurenda who is at the helm of NDOC and thus Defendants' superior. In the Letter, Plaintiff also asked that Defendant Brendel "be disciplined per AR 339." (*Id.* at 22.) Plaintiff ends the Letter with what can only be read as veiled threats of his own. (*Id.* at 23.) Specifically, Plaintiff states "I, already took this facility to federal court, for retaliation over sending me to maximum prison because I filed a grievance," and indicating that matter was settled. (*Id.*) Plaintiff also directs:

> This can go two ways. I can remain at NNCC, continue working (not in culinary!). Or NNCC can write bogus charges and send me away. Which will result in another federal case, and cost NDOC again. I will leave it up to NDOC to decide.

(*Id.*) Plaintiff further warns in the Letter that "[i]f false charges are brought against me, I will file a criminal complaint with Special Agent Keeney or Agent Flankton of the FBI in Las Vegas NV." (*Id.*)

As to the subjective showing, the Court does not find that Plaintiff has demonstrated a "basis" supporting that he "actually believed" that Defendants would retaliate against him for filing a grievance, nor is the Court persuaded that Plaintiff was actually deterred by purported threats. Here, Plaintiff's Letter evidences that he reported Brendel to "Sergeant Roberson," even after he claims Brendel told him not to take further action. Plaintiff also wrote a letter to Defendants' superior—Dzurenda—although he represents that Defendant Miller threatened to retaliate if Plaintiff reported to "anyone above him" *or* filed a grievance. This Court concludes that Plaintiff's actions are not consistent with that of an individual who "actually believed" he would face retaliation if he pursued complaints (in the form of

///

///

///

7

grievances or otherwise) against Defendants.[4] The fact that Plaintiff informed Defendants' superiors also supports the conclusion that Plaintiff was not actually deterred by the purported threats. That Plaintiff was subjectively unbothered is further bolstered by the fact of Plaintiff going on the offensive with his own threats of taking legal action against Defendants in the Letter. Indeed, Plaintiff's Letter—both the fact that it was addressed to Dzurenda and the content where he made threats about filing a federal action and criminal complaint—shows Plaintiff was trying to circumvent the grievance process and address his grievance directly with Defendants' superior, not that he was subjectively deterred by the threats. Accordingly, Plaintiff fails to establish the subjective prong.[5]

Plaintiff has also failed to satisfactorily establish the objective prong. Here, the only apparent "threat" that Plaintiff pinpoints relating to the grievance process is the alleged statement by Miller that "if I try to report incident to anyone above him (wardens) or file a grievance [, h]e will have me immediately locked up and take all my property away." (ECF No. 37 at 22.)[6] The Court is not convinced that such a threat—drawing reasonable inferences in Plaintiff's favor—raises to the level of severity that would deter a reasonable person from pursuing a grievance. For comparison, in *Turner v. Burnside*, the Eleventh Circuit found a "serious threat[] of substantial retaliation" where the following occurred

///

---

[4]*But see Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) (rejecting the contention that the plaintiff was not sufficiently frightened as to render grievance procedures unavailable where the plaintiff sent a letter to a superintendent before filing suit) recognized as abrogated by *Ross* in *Medina v. Napoli*, 725 F. App'x 51, 52 n.1 (2d Cir. 2018); *cf. Turner*, 541 F.3d at 1086 (acknowledging *Hemphill*'s pronouncement, but declining to "adopt a rule categorically precluding the factfinder from considering the fact that the inmate *did* file a lawsuit in spite of the alleged threat [but instead deciding that] the fact the inmate has filed the lawsuit does not necessarily mean that the alleged threat did not deter him . . .") (emphasis added).

[5]Further, neither the Letter nor Plaintiff's declaration directly link any Defendant to a statement supporting Plaintiff's contention that he was threatened to be sent away to maximum security prison.

[6]As to the other statements, the Court agrees with Judge Carry that "the Court cannot assess whether a reasonably objective prisoner would have understood the Defendants intended to retaliate for filing a grievance." (ECF No. 44 at 6.)

> The warden told him, according to Turner: "that if I didn't like the way they did things around here he would put my ass in the van . . . and transfer me so far south that I would never be able to see my family again till I got out of the Georgia Prison system." [The warden] then tore up Turner's complaint in front of him and said that he "had better not hear of another grievance or lawsuit pertaining to [Turner] getting shocked."

541 F.3d 1077, 1081, 1085 (11th Cir. 2008);[7] *see also Tuckel v. Grover*, 660 F.3d 1249 (10 Cir. 2011) (inmate alleged that he was beaten for submitting a complaint through the prison grievance process).

In his Objection, Plaintiff also contends that his attempt to participate in NDOC's grievance process was thwarted where a caseworker (Buchanan) declined to accept his complaint regarding staff misconduct, which Plaintiff noted in his declaration (*see* ECF No. 37 at 18). (ECF No. 45 at 3.) However, even assuming that Buchanan's alleged conduct subjectively hindered Plaintiff from availing himself of the administrative process, the Court finds that Plaintiff's failure to move forward with filing a grievance was objectively unreasonable. While AR 740 provides that an individual should discuss grievable issues with his caseworker before engaging in the grievance process, there is no explicit requirement that the caseworker must agree with the individual's view of the dispute or approve of the individual's complaint before the individual may proceed with administrative remedies. (ECF No. 35-7 at 5.) Upon discussing his issues with Buchanan, based on a plain reading of AR 740 Plaintiff satisfied his obligation to attempt informal resolution and was therefore then able to move forward with the grievance process.[8]

In sum, the Court finds that Plaintiff fails to establish that his failure to exhaust is excusable. Accordingly, the Court will adopt Judge Carry's recommendation that Plaintiff's FAC be dismissed for Plaintiff's failure to properly exhaust his claims. In light of this dismissal, the Court also adopts Judge Carry's recommendation that Plaintiff's motions for

///

---

[7]Turner had also filed a formal grievance, but never received a written response. *Turner*, 541 F.3d at 1084.

[8]To the extent Plaintiff claims that Defendant Howard also did not accept his complaint of staff misconduct, it is not apparent that Howard is an official intrinsic to Plaintiff's ability to participate in the grievance process.

9

a temporary restraining order (ECF No. 29) and preliminary injunction (ECF No. 30) be denied as moot. The Court thus accepts and adopts the R&R in full.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge Carla B. Carry (ECF No. 44) is accepted and adopted in its entirety.

It is further ordered that Plaintiff's Objection (ECF No. 45) is overruled.

It is further ordered that Defendants' motion for summary judgment (ECF No. 35) is granted. Plaintiff's claims are dismissed for his failure to exhaust administrative remedies.

It is further ordered that Plaintiff's motions for temporary restraining order (ECF No. 29) and preliminary injunction (ECF No. 30) are denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 25th day of September 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE